## McCARTER v. ARMSTRONG.

1. To entitle a complainant to a decree for specific performance, some equitable feature must exist which would have brought the case within the jurisdiction of the old Court of Equity. Under the Code of Procedure, the Court of Common Pleas has its equity side, in which equity causes are distinctly adjudicated.
2. A suit in equity for specific performance will not lie where there is an adequate legal remedy for the breach of contract complained of, and which may be reasonably satisfied with a verdict for damages.
3. Specific performance of a contract to drain lands, under a stipulated penalty, refused, because (1) the injury could be ascertained and compensated; and (2) the work to be done was not well defined, and called for a personal act of construction requiring protracted supervision and direction.

Before FRASER, J., York, April, 1889.

This was an action by Elias A. B. McCarter and the other persons named in the contract below as "parties of the second part" against L. K. Armstrong, commenced September 27, 1887. The complaint demanded specific performance of the following agreement:

This indenture between Lawson K. Armstrong, of the first part, and Elias A. B. McCarter, D. W. McCarter, J. R. McCarter, Joseph Herndon, Curtis M. Parrott, and James B. Woods, of the second part, witnesseth:

Whereas, the party of the first part is the owner of a certain mill and mill site on Allison Creek, in said county and State, extending up to "high water mark," as indicated by the pond, and formerly known as the Patton mill; and, whereas, the parties of the second part are the owners of lands lying above the said creek from said mill, the McCarters together, and the others severally, owning separate tracts, and each tract being injured by said pond in this, that it is wholly impracticable to drain the bottoms thereon without letting and keeping down the dam, and ditching the stream that lies within the boundaries of the said pond;

and, whereas, the boundary of the said "high water mark" has just been ascertained by a survey (as evidenced by a plat made by Surveyor W. B. Allison, May 4, 1886, which is attached to and made a part of this indenture), to the end that the dam may be removed without having said boundary in doubt:

I. That in consideration of the covenants, agreements, grants, and quit claims of the parties of the second part, hereinafter specifically recited, the first party, for himself, his heirs and assigns, does, by these presents, covenant and grant with and to the parties of the second part, their several heirs and assigns, as follows, to wit:

1. That the said first party is to take down so much of the mill dam as may be necessary for the purpose hereinafter stated, and never again to erect the same, or to do or suffer any other act that will interfere with the full flow of water along the channel of said creek, over the land that the said mill is situated upon, and, further, to dig out, ditch, and open *the* channel of said creek up to the "Suggs" line, so as to allow all running water to flow freely; the ditch to be sufficient in size to drain the lands of the parties of the second part above, by carrying off all the ordinary water from the lands of the second parties, and to be completed by the first day of July, 1886, unless prevented by rocks that require blasting, and then in a reasonable time thereafter, and to be kept open and unobstructed forever, unless obstructions below the line of the first party cause a common fill of the ditch above said line.

2. That for the faithful performance of these covenants, and every of them, the first party hereby binds himself to the second parties in the penal sum of six hundred dollars.

3. That the better to secure the rights hereby intended to be given to the parties of the second part, the first party does hereby grant to the parties of the second part the right to the full, free, and uninterrupted enjoyment of the natural flow of water along the said water course, as the same will naturally run, over the lands of the first party, after the removal of the dam and the ditching as aforesaid, and to the extent of the boundary of said land below the said dam; together with such free ingress and egress as may be necessary to insure the proper enjoyment of the easement hereby granted: To have and to hold, all and singular, the privileges aforesaid to the parties of the second part, their respective heirs and assigns, forever.

II. That in consideration of the above covenants and grants, the parties of the second part hereby agree to pay at the execution of this indenture, and do pay (the first party acknowledging its receipt), the sum of six hundred dollars to the first party, and in addition thereto, they, for themselves and their respective heirs

and assigns, do by these presents covenant and grant with and to the party of the first part, his heirs and assigns, as follows, to wit:

1. That it shall be lawful for the said party of the first part, and the right is hereby granted to him, (1) to use and enjoy, as a way to and from the bottoms of the first party, the "old tract" leading from the main road to the said bottoms, and (2) to remove all growing timber around the edges of the "pond bottoms" shading and injuring the growing crops: To have and to hold said privileges to the said party of the first part, his heirs and assigns, forever.

2. That the parties of the second part do, by these presents, remise, release, and forever quit-claim unto the first party all their joint or several rights, title, or estate in and to the land heretofore covered by the said pond.

The Circuit Judge filed his decree, in which, after stating the case and construing the agreement, and finding that the defendant had fully performed his covenants, his honor held as follows:

If the plaintiffs have the right under the agreement to enter upon the land of the defendant for the purpose of digging out the ditch to the proper size, they might do so on his refusal or neglect, and recover the amount as damages in an action at law, and they would have no case for specific performance on the equity side of the court. My construction, however, of this agreement is that plaintiffs have no such right. The right that they do have is of such ingress and egress as may be necessary to insure the proper enjoyment of the easement hereby granted, which is "the right to the full, free, and uninterrupted enjoyment of the natural flow of water along the said water course, as the same will naturally flow over the land of the defendant after the removal of the dam and the ditching as aforesaid." There is no right of ingress and egress hereby given to plaintiffs to remove the dam, blast the rocks, or to "dig out, ditch, or open the channel"; and any entrance by plaintiffs to do any of this work in the first instance, and which the defendant ought to do, and alone has a right to do, would be trespass on their part, and subject them to an action for damages.

Here, there is work which the defendant has agreed with the plaintiffs to do on his own land, and as to which, under this very covenant, he holds a quit claim title from the plaintiffs, and which work is necessary for the creation and enjoyment of an easement in favor of and for the benefit of the lands of plaintiffs, and to

which the land of the defendant is to be subservient perpetually. Is this case one in which damages are a sufficient compensation for the breach of the contract, or is it a case for specific performance? "Wherever * * * the party wants the thing *in specie*, and he cannot be otherwise fully compensated, the Court of Equity will grant him specific performance." Story Equity, § 746. "The principle which is material to be considered, is that the court gives specific performance, instead of damages only, when it can by that means *do more full and complete justice*." Pom. Eq., § 1401, quoting the language of Lord Selbourne: "There are some special cases of contracts for the sale of chattels, things in action, and to perform awards, and a few cases of agreements to perform certain personal services peculiar in their nature, where the court will order specific performance. Whenever, however, a contract for the sale of land is in due form, upon sufficient consideration, and definite in its terms, the court always enforces a specific performance."

This contract is not one for the sale of land, but it is one to create a charge on one estate for the benefit of another; an easement to which the servient estate will be perpetually liable, and to which the dominant estates will be perpetually entitled, and which will pass with the dominant estates to heirs and assigns forever, and without which these dominant estates may never be of any value. To my mind, it seems that such an agreement should stand in all respects on the same footing as an agreement to convey land itself—the easement is one of those rights which goes with the land and gives it a special value, or perhaps its whole value, and places land in such a position that the courts never hesitate, on a valid contract for its conveyance, to order specific performance. If no damages can compensate for failure to convey land, it is hard to see how damages can compensate for the failure to perfect the easement which gives the land, perhaps, its only value—certainly its chief value in this case.

It is for this reason, and that the work was to be done on the land in the possession and under the exclusive control of the defendant, that specific performance was granted to compel a railway company *to make and keep up an archway through their* railway, to connect lands of plaintiff severed by the railway.

*Storer* v. *Ry. Co.*, 2 Y. & C. C. C., p. 49, and *Saunderson* v. *Cockermouth &c. Ry. Co.*, 11 Beav., 497 ; to compel the defendant to alter the elevation of a house erected in contravention of a covenant. *Franklyn* v. *Tutton*, 5 Mad., 469 ; and where the work had *once been done*, to compel by *injunction* a defendant to keep a canal and arch in repair. *Lane* v. *Newdigate*, 10 Ves., 192. Where a plaintiff had sold land to the defendants, and they by deed covenanted forthwith to make a road and erect a market house on the land, the defendants entered and made the road, but neglected to build the market house, Vice Chancellor Wigram observed that the defendants having had the benefit of a contract *in specie*, the court would go any length to compel them to perform their contract *in specie*. *Price* v. *Corporation of Penzance*, 4 Hagg., 506.

In this case the defendants have had a performance *in specie*, for the plaintiffs seem to have had some rights in the soil below the "Suggs line," formerly covered with water, which defendant thought of sufficient value to be the subject of a quit claim from the plaintiffs.

I find these references in Fry on Specific Performance, p. 21, sections 52, 53, and 54, where I find the remark in section 54: That in the cases of *Price* v. *Corporation of Penzance* and *Storer* v. *Ry. Co.*, *supra*, plaintiffs had parted with the land, and had no opportunity of doing the work the defendants had contracted to do, and so ascertaining the amount of damages sustained by the non performance. Perhaps the true ground upon which these cases rest is, that the work in the nature of an easement was important, if not necessary, for the enjoyment of the lands of plaintiffs and on the land of defendant ; and if he did not perform his contract, no one else had a right to do it—the injuries from non-performance being of that character which could not be compensated in damages. * * *

It is therefore ordered and adjudged, that the defendant do specifically perform his contract to "dig out, ditch, and open the channel of said creek (Allison's) up to the 'Suggs line,' so as to allow all running water to flow freely ; the ditch to be of sufficient size," *i. e.*, sufficiently wide and deep, "to drain the lands of the plaintiffs by carrying off all ordinary water from the lands of the

plaintiffs"; not to carry off the water of freshets, but to allow ordinary water to flow free, so as to drain or dry the land, and not simply to draw off surface water.

It will be necessary, in accordance with the practice adopted in *Mosely* v. *Virgin* (3 Ves., 185), to ascertain by a reference the specifications of the work to be done, to give effect to this decree, and the amount of damage for failure of defendant heretofore to perform his contract. It is therefore ordered, that it be referred to W. Brown Wylie, the clerk of the court, to take testimony as to what work is necessary to be done under said contract to give said ditch sufficient size—*i. e.*, what should be the width and depth of the ditch at and below the "Suggs line," with proper fall from that point to allow the water to flow freely—being guided by the views herein expressed—and that he report the testimony and his suggestions as to the proper specifications for the work to be ordered by the court. Parties having the right to use the testimony taken before me, as taken down by the stenographer and contained in my notes of testimony—ordered, that he do take testimony, and report the same with his conclusions thereon, as to damages sustained by plaintiffs by the failure of defendant to perform his contract in reference to said ditch. Ordered, that on the coming in of these reports, the plaintiffs have leave to apply for such further orders as may be necessary or proper in the case.

From this decree defendant appealed. Upon the point decided by this court, an abstract of the arguments of counsel is here given.

*Messrs. Hart & Hart*, for appellants.

Upon what is here before us, a Court of Equity should not entertain this bill as one for specific performance. The contract is wanting in certainty : as to the quantity of the dam that is to be taken down, as to the width and depth of the ditch or channel, and as to the time of completion; and the channel is to be kept open and unobstructed forever. Upon this, his honor halted, and committed the matter to a referee, to take testimony anew and report what is to be done.

We think the following propositions, applicable to this excep-

tion, are sustained· by the weight of authority : 1. A Court of Equity will never assume the enforcement of a contract where there is doubt or uncertainty as to time, mode, or manner of performance. 2. It will not assume to command the doing of an act by another, where it cannot, through its own ministerial officers, perform it. 3. It will not decree a performance that cannot be commanded *in specie* instantly, directly, and in definite terms.

Our own courts are sparse of precedents to aid us in a case like this. Their absence from our reports would seem to indicate that legal opinion did not approve the remedy in such cases. Decrees for specific performance have been confined to contracts for the sale of lands, to the execution of wills and other agreements that the court could execute directly by force of its judgment alone. They have never undertaken to command the performance of labor, the expenditure of money, or the building or repair of structures on real estate. They have never undertaken to act as overseers, supervisors, or directors in any case of a continuing contract, such as the one at bar.

Counsel here cited and commented upon our own cases of *Reed* v. *Vidal*, 5 Rich. Eq., 289, and *Church of Advent* v. *Farrow*, 7 *Id.*, 378 ; and also cited and quoted Story Eq., §§ 725, 726, 767 ; *Raynor* v. *Stone*, 2 Eden, 128 ; *Gervais* v. *Edwards*, 2 Dru. & Walsh,    ; *Blackett* v. *Bates*, 1 Ch. App., 117 ; 3 Sm. & Gif., 119 ; *Blanchard* v. *R. R. Co.*, 31 Mich., 43 (to which particular attention was asked) ; *Rankin* v. *Maxwell*, 2 A. K. Marsh., 488 ; *Colson* v. *Thompson*, 2 Wheat., 336 ; Fry Spec. Perf., § 229 ; Story Eq., § 764 ; *Phillips* v. *Thompson*, 1 Johns. Ch., 150 ; *Parkhurst* v. *Van Cortlandt, Ibid.*, 283 ; *Preston* v. *Preston*, 5 Otto, 202 ; *Marble Co.* v. *Ripley*, 10 Wall., 358.

*Mr. C. E. Spencer*, contra.

This is a contract which may be specifically enforced. What are the requisites ? 1. Valuable consideration. Adams Eq., *78. 2. Enforcement *in specie* practicable. *Id.*, *80. *a.* Something defendant can do. *b.* Something that may be judicially compelled. 3. Performance necessary, *i. e.*, the legal remedy of damages must be inadequate. *Id.*, *83. *a.* Important to plaintiff. *b.* Not oppressive to defendant. The remedy is applicable when the

14 -32

thing contracted to be done, and not pecuniary compensation, is the thing practically required. *Id.,* \*84. Specific performance will not ordinarily be decreed for a sale of personal property, such as stock, because, with a sum equal to the market price, other like stock may be purchased. *Id.,* \*83. But in *Sarter* v. *Gordon,* 2 Hill's Ch., 121, a contract concerning slaves was specifically enforced, because full justice could not be done by compensation in damages, the slaves having been brought up in the family. In this last case, it is laid down that any fair and reasonable contract will be enforced (including contracts in personalty, of course), unless it appears that full justice may be done by compensation in damages. To the same effect, see, also, *Farley* v. *Farley,* 1 McCord Ch., 506, and the several English cases cited on page 517, to show how performance will be decreed, even in personal property, when the article, the subject of the contract, had some peculiar value that ordinary damages at law would not compensate for.

The application is doubtful in house building; but if the house is to be erected on defendant's land, or if only the defendant can erect it, and the non-erection cannot be compensated for by money, the equitable jurisdiction is clear, and the court will see that the work is properly done. Adams Eq., \*84. To the same effect, see *Mosely* v. *Virgin,* 3 Ves., 185, where the court, as preparatory to a decree for performance, referred it to two clergymen to return specifications for a proper parsonage house, the contract calling for such. In matters of repairs or putting land in a particular state of cultivation, the rule does not obtain, for the damage is nothing but the cost of getting some one else to do the work. Adams Eq., \*84.

The case of *Reed* v. *Vidal,* 5 Rich. Eq., 289, is not in the way, for there the work was to be done on plaintiff's land. And in *Flint* v. *Brandon,* 8 Ves., 160, whilst the principle is admitted, the application is denied; but the work to be done was to dig a gravel pit on plaintiff's land : clearly something that could be done by the plaintiff, and for the non performance of which damages would fully compensate.

*As to the case at bar.* If the contract had been to cut a ditch hrough plaintiffs' lands for drainage purposes, clearly it could

not be enforced. But it is to cut a ditch through defendant's land to drain plaintiffs' bottoms. Even with a verdict, we could not, without defendant's consent, put a force upon his land to cut the ditch. So, of necessity, the court below had to assume equity jurisdiction, to the end that performance by defendant might be decreed.

March 3, 1890. The opinion of the court was delivered by

MR. CHIEF JUSTICE SIMPSON. Some time in 1886, the plaintiffs, respondents, and the defendant, appellant, entered into a certain written agreement, a copy of which is hereto appended, in which it was stipulated that a certain mill dam across Allison's Creek, in the County of York, at a point where the defendant had a mill, should be taken down by the defendant, and the channel of the creek above said dam dug out, ditched, and opened up to the Suggs line, so as to allow all running water to flow freely, the ditch to be of sufficient size to drain the lands of the respondents, which, it was stated, were greatly injured by the pond; this said work to be completed by the 1st day of July then ensuing, in 1886, unless prevented by rocks requiring blasting, and then in a reasonable time, and when completed to be kept open and unobstructed forever, &c., which the defendant bound himself faithfully to perform in the penal sum of $600, the plaintiffs agreeing to pay the defendant $600 at the execution of the agreement, which payment was acknowledged by the defendant, and also stipulating for some other privileges to the defendant, all of which appears in the agreement appended.

The work not having been done, as it is alleged, although frequently requested by the plaintiffs, the action below was commenced in September, 1887, in which the plaintiffs prayed judgment: "(1) That the defendant be forthwith required to cut the said ditch in manner and form as he had undertaken to do, that is to say, so that it would allow all ordinary water to flow freely through it from off the plaintiffs' lands above, and to be of sufficient size for that purpose; and further, that he be required to keep the same open and unobstructed forever, and failing in this, that the plaintiffs be allowed to do the said work at the defendant's expense. (2) For the sum of nine hundred dollars, spe-

cial damages suffered by the plaintiffs from the defendant's fail-
ure of performance up to the present time, as well as for dam-
ages to follow hereafter up to the time of performance, and for
the costs of this action." The defendant answered, denying cer-
tain allegations of the complaint, but averring that he had per-
formed the work which the agreement required of him according
to the stipulation therein; and further averring that the failure
of the ditch to drain plaintiffs' lands was due to other causes than
the imperfect construction of the ditch.

Before the case came up for trial, the defendant gave notice,
under rule 28 of the Circuit Court, that an order would be ap-
plied for, submitting certain issues to a jury, and at the Novem-
ber term, 1888, his honor, Judge Kershaw, upon hearing the
motion, made an order appointing a referee to frame jury issues,
and continued the case. These issues were framed, and after-
wards reported to the court. They will be found in the "Case."
When the case afterwards came up for trial, his honor, T. B.
Fraser, presiding, "announced (against the objection of the plain-
tiffs, who contended that the case was one in equity for specific
performance) that he would submit the whole case to a jury, and
let them find a general verdict; that he was inclined to the opin-
ion that it was not a case of equity jurisdiction for specific per-
formance; but if he should conclude later that it was such, he
would hear the case on calendar 2, when reached on that calen-
dar. The jury found for the defendant, and when the case was
reached on calendar 2, the plaintiffs moved for a new trial, in
the event that his honor still thought the case was a case at law.
His honor then announced that he would hear counsel on the
prayer for specific performance, after which he filed a decree giv-
ing judgment for specific performance, and granting such orders
as were necessary to enforce said judgment.

The defendant has appealed upon several exceptions, all of
which will be found in the "Case;" but from the view which we
have taken of the appeal, we think that exception 5 is the only
one that raises any question proper for our consideration. That
exception alleges error to his honor "in reversing his first con-
clusion at the opening of the trial, that the case presented by the
pleadings was not one for specific performance, but an action

sounding in damages for breach of contract, especially as the trial had been conducted under that ruling."

The remedy of specific performance is an equitable remedy; and when the Court of Equity had a separate existence in this State, it attached to that court, or wherever it has a separate existence now this remedy belongs to that court exclusively, "the distinctive object being to enforce specifically an equitable right, and to compel the defendant to specifically perform an equitable obligation resting upon him." 3 Pom. Eq. Jur., § 1400. This equity may exist in reference to certain contracts, and also to enforce the performance of trusts; but whatever may be the character of the case, some equitable feature is necessary in order to entitle the complainant to invoke the aid of the Court of Equity. Since the adoption of the Code in our State, blending the two Courts of Law and Equity, the same necessity exists. In fact, there has been no change as to equity jurisdiction, the change has been merely as to the mode of procedure. The Court of Common Pleas has an equity side as well as a law side, but neither one of these branches has been extended or authorized to encroach upon the other. What was a law cause of action before is still a law case, and what was an equity cause is still an equity case. So that to determine the question here, whether or not the plaintiff is entitled to his demand for specific performance, we have only to consider whether he would have been thus entitled under the old Court of Equity.

The matter in contest here is a contract or an agreement for the performance of certain work by the defendant, in order to drain or carry off water from the lands of the plaintiffs. Now, as stated above, the old Court of Equity had jurisdiction to enforce the performance of certain classes of contracts. Does this belong to one of the classes? is the question here. The marked cases in which there was no doubt as to the jurisdiction of the old court were in reference to contracts for the sale of lands, and also for the sale of certain specific chattels, where the said chattels had some special value to the claimant over and above any pecuniary estimate. 3 Pom. Eq. Jur., § 1402. But still the jurisdiction did not depend entirely upon the nature of the contract, nor upon its subject matter, but upon some equitable fea-

ture or element belonging thereto, and this feature was generally
the inadequacy of a legal remedy; and where this existed clearly,
there was an equitable foundation for the interposition of the
Court of Equity for specific performance.    If the breach of the
contract, however, could be reasonably satisfied with damages,
then the Court of Equity could not interfere.    So that in all
these cases in reference to contracts, the underlying principle is
the practicability or impracticability of a sufficient and adequate
legal remedy.

Now, the ordinary legal remedy for the breach of contracts is
an action for damages, and where proper damages can be assessed
by a jury, it is a law case, and the Court of Equity has not and
cannot take jurisdiction. Here the injury complained of is alleged
to be the result of a failure on the part of the defendant to per-
form his part of the agreement mentioned in the complaint.    Ad-
mit the failure, where is the difficulty in proving and recovering
the consequent damages ?    And why is it that the remedy at law
is insufficient or inadequate ?    We do not see this.    The value of
the work stipulated in the agreement to the plaintiffs was some
$600, the amount paid by them to the defendant, and the allow-
ance of some specified privileges to him, and for the performance
of the work the defendant bound himself in the penal sum of $600.
Thus it seems the parties themselves in the agreement determined
to some extent the value of said work if properly performed, and
also what amount would cover damages in the event that defend-
ant failed on his part.    And we see no reason, growing out of
the facts alleged in the complaint or proved on the trial, which
could prevent a jury from giving an adequate redress for such
damages, if any, as may have been sustained by plaintiffs.    The
injury complained of was upon the lands.    The value of land can
certainly be estimated, and, we suppose, it could be determined
whether it had been injured in whole or in part only, and there
seems to be no special reason in this case why the extent of the
injury could not have been ascertained, and why a sufficient pe-
cuniary compensation for whatever injury the plaintiffs have sus-
tained, if any, would not be satisfactory.

But, besides, contracts for building and construction and for
personal acts, &c., will not usually be enforced in a Court of

Equity, but the parties will generally be left to an action at law for their breach, unless under some peculiar circumstances, and unless, too, the work to be done is well defined and specified, and is such as to be within the power of the court to enforce by its decrees. Where, however, the work consists of personal acts, requiring protracted supervision and direction, *e. g.*, such as building contracts for construction of railroads, mining quarries, and the like, the court will not generally interfere. See Pom. Eq. Jur., § 1405, and numerous cases in the notes. Here the work was to be kept up forever.

We have reached our conclusion with some hesitation and doubt, but we think this case was one sounding in damages, and could be redressed, if there has been a breach and an injury sustained, by verdict of a jury, the facts necessary thereto being peculiar to a jury. We are therefore of the opinion that his honor, the trial judge, erred in reversing his first conclusion, and after a verdict had been rendered for the defendant, in opening the case and trying it anew upon the equity side of the court.

It is the judgment of this court, that the judgment of the Circuit Court be reversed, and that the case be remanded, with the right of the defendant to enter judgment upon the verdict, without prejudice, however, to plaintiffs to take such action in reference thereto as they may be advised.