B. H. CHAMBERS ET AL. v. THE NORTH RIVER LINE, INC., ET AL.

(Filed 18 February, 1920.)

1. **Lessor and Lessee—Leases—Covenant to Repair—Negligence—Act of God.**

> The lessee's covenant to maintain the leased premises in its present condition is equivalent to a general covenant to repair and leave in repair under the common law, and unless otherwise stated in the lease or provided by statute this duty is not affected by the lessee's negligence or the fact that the property had been destroyed during the continuance of the lease by the act of God or the public enemy.

2. **Same—Common Law—Statutes—Modification—Ice—Fire.**

> Where a wharf and pier are the subjects of a lease wherein the lessor has covenanted to maintain, etc., and its partial destruction was caused by the breaking up of the ice on the water, the lessor's obligation is not affected by our statute, Rev. 1935, which modifies the common law only in instances where the leased premises is destroyed or damaged to more than one-half of its value by accidental fire not occurring from the want of ordinary diligence on the part of the covenanter. Revisal, sec. 1992 is confined to demised houses or other buildings, expressly excluding "agreements respecting repairs, etc.," and has no application.

3. **Lessor and Lessee—Leases—Covenants to Repair—Rents.**

> Where the lessor has failed to fulfill his covenant obligating him to repair the leased premises, he may not successfully resist his lessor's demand for the full payment of rent contracted for, on the ground of the worthlessness of the premises after its partial destruction.

APPEAL by defendants from *Lyon, J.,* at September Term, 1919, of CAMDEN.

This is an action to recover damages for failure to rebuild a wharf known as "Shiloh" wharf, and for rent under the lease thereof. The case was submitted upon facts agreed. It appeared therefrom that the defendant lessee covenanted "to maintain the said wharf in its present condition during the continuance of this lease"; that the defendant com-

pany went into possession of the premises and paid the rents provided therein up to 31 December, 1917; that on 15 January, 1918, 270 yards of said wharf were totally destroyed, leaving standing and remaining only 100 yards thereof next to the shore, built over shallow water, and about one-half of the pier-head. The freight house at end of said wharf was also completely destroyed..

It was also stated in the facts agreed that "the destruction of said 270 yards of wharf, including the freight house as aforesaid, was due solely to the freezing of Pasquotank River, and the subsequent breaking up of the ice therein, which swept the same away, and the destruction was not due in any part to any fault or negligence on the part of the defendant company. The 100 yards of wharf remaining, as aforesaid, including the one-half of the pier-head also remaining, and all other property rights mentioned in said lease, are absolutely incapable of use for the purpose mentioned in the lease, unless the 270 yards of wharf and the freight house, swept away as aforesaid, be rebuilt."

It was further agreed by the parties that "said freeze began on 31 December, 1917, and continued till 24 January, 1918, and there had been only three such freezes in that locality in the last forty years." It is admitted that immediately after the destruction of the property aforesaid, the plaintiffs called upon the defendant to replace the same, and the defendant declined to do so, denying any further liability under the lease; and has made no use of the premises since that time. It was agreed, at the time of the refusal of the defendant to rebuild, that the cost of rebuilding the wharf and freight house would be $1,000.

Upon the above admissions the court rendered judgment that under the terms of the lease the plaintiff recover $1,000, the cost of replacing said property, and $420, the rent accrued since 31 December, 1917, up to 30 September, 1919, and the costs. Appeal by defendants.

*Meekins & McMullan for plaintiffs.*
*Ehringhaus & Small for defendants.*

CLARK, C. J. The court properly held that by reason of the failure of the defendant to rebuild the 270 yards of wharf and repair the damages to the freight house there was a breach in its covenant "to maintain the said wharf in its present condition during the continuance of this lease." And that the defendant was liable for rent to the trial, notwithstanding the destruction of the wharf, and for the damages, $1,000, which it was agreed by the parties would be the cost of replacing the destroyed wharf and repairing the freight house.

The defendants contended that said covenant did not obligate the defendant to replace the property, which had been destroyed without

fault or negligence on its part, and that the destruction of the property also released the defendant from liability for rent. The court rendered judgment against the defendant on these points, and it appealed. The plaintiff contended that the defendant was further liable not only for rent and $1,000 agreed upon as the cost of replacing the wharf, but also for the difference in value of the property before and after the destruction of the wharf, plus the present cash value of the rent for the remainder of the unexpired term. The court held against this contention, and the plaintiff did not appeal.

The covenant "to maintain the premises in their present condition during the continuance of this lease" is equivalent to a general covenant to repair and leave in repair under the common law. It is well settled by the authorities that under a covenant of this kind, "when the property is destroyed by fire, flood, tempest, or other act of God or the public enemy," it is the duty of the contracting party to rebuild, unless relieved therefrom by statute or exceptions specially incorporated in the lease.

The law is thus summed up in 16 R. C. L., title "Landlord and Tenant," sec. 605: "It is the well settled common-law rule that a tenant's general covenant to repair the demised premises binds him under all circumstances, even though the injury proceeds from an act of God, from the elements, or from the act of a stranger," and if he desires to relieve himself from liability to injuries resulting from any of the causes above enumerated, or from any other cause whatever, he must take care to except them from the operation of his covenant. Under this rule, if the tenant enters into an express and unconditional covenant to repair and keep in repair, or to surrender the premises in good repair, he is liable for the destruction of buildings not rebuilt by him, though the destruction may have occurred by a fire or other accident or by the act of enemies, and without fault on his part."

In 18 A. & E. (2 ed.), 249, the rule is thus stated: "A general covenant by the tenant to repair or keep premises in repair includes a covenant to rebuild, and it was settled at an early date that such covenant imposes upon the tenant the obligation to rebuild in case the premises were destroyed." It is further said that "the obligation to rebuild in case of the destruction of the premises imposed by the lessee's covenant to repair, exists irrespective whether the destruction was caused by storm, flood, fire, inevitable accident, or the act of a stranger."

The word "maintain is practically the same thing as repair, which means to restore to a sound or good state, after decay, injury, dilapidation, or partial destruction." *R. R. v. Bryan* (Texas), 107 S. W., 576, citing *Verdin v. St. Louis* (Missouri), 27 S. W., 447.

In *R. R. v. Iron Co.*, 118 Tenn., 194, it was held that where a railroad company agreed to construct and lay a branch track to the mines of a

mining company, and to "maintain and operate the same," the railroad company was obligated to reconstruct a bridge constructed by the mining company after the bridge was washed away by an extraordinary freshet, though the bridge under the contract would become the property of the mining company after completion.

In *Pasteur v. Jones,* 1 N. C., 393, the Court held: "That where a tenant covenanted to build and leave in repair, and did build, but the houses were destroyed by fire, the Court of Equity would compel him either to rebuild or pay the value of the buildings."

The defendant is not relieved by Rev., 1935, which provides: "An agreement in a lease to repair a demised house shall not be construed to bind the contracting party to rebuild or repair in case the house shall be destroyed or damaged to more than half of its value by accidental fire not occurring from the want of ordinary diligence on his part." This statute was enacted to change the rule, formerly existing, but limits its application to the destruction of a house by accidental fire, and only then where it is damaged to more than half its value. It does not apply to this case where the destruction is not by fire, but by ice and flood. In 18 A. & E., 307, "the question as to the liability of the tenant, in case of the accidental destruction of the buildings, has chiefly arisen where the buildings have been accidentally burned, but applies equally whatever the causes of their destruction. The tenant is not relieved from future rents though the demised building is destroyed by reason of inherent defects existing at the time of the letting."

The same rule is laid down in 24 Cyc., 1089: "According to the common-law rule, which has been followed generally in this country, a covenant on the part of the lessee to repair or keep in good repair imposes on him an obligation to rebuild the demised premises if they are destroyed during the term by fire or other casualty, even where he is without fault," citing a large number of cases. It is pointed out, however, that in some States this rule has been modified by statute. In this State the only modification has been as above stated in the case of a house destroyed by fire or damaged to more than one-half.

As to rent, this Court has sustained the common-law rule as to the liability of the tenant therefor, notwithstanding the premises have been destroyed by fire. *Improvement Co. v. Coley-Bardin,* 156 N. C., 257, where the Court said: "The common law regards such a case as the one in evidence as the grant of an estate for years to which the lessee takes title. The lessee is bound to pay the stipulated rent, notwithstanding injury by flood, fire, or other external causes. It required a statute of the State to relieve the lessee where the property is destroyed by fire."

The liability of the defendant for rent is in no wise affected by Rev., 1992. An inspection of this statute will show that not only is it in terms

confined to a demised house or other building, but that it expressly excepts from its provisions those leases in which there is an "agreement respecting repairs." An inspection of the statute will further disclose that by its express terms it requires, as a condition precedent to its application, that a lessee "surrender his estate in the demised premises by a writing to that effect, delivered or tendered to the landlord within ten days from the damage."

It thus appears that the liability for rent upon the part of the defendant is controlled by the rule of the common law, unaffected by any statutory provisions.

Affirmed.