**TENNESSEE ELECTRIC POWER CO. v. WHITE COUNTY.**

**SAME v. VAN BUREN COUNTY.**

**Nos. 5733, 5734.**

Circuit Court of Appeals, Sixth Circuit.

Oct. 9, 1931.

Frank Spurlock, of Chattanooga, Tenn. (L. N. Spears and Brown & Spurlock, all of Chattanooga, Tenn., on the brief), for Tennessee Electric Co.

Joe V. Williams, of Chattanooga, Tenn. (L. D. Smith, of Nashville, Tenn., and James M. Brady, of Spencer, Tenn., on the brief), for the counties.

Before MOORMAN and HICKENLOOPER, Circuit Judges, and WEST, District Judge.

MOORMAN, Circuit Judge.

In 1916, the Tennessee Power Company petitioned White and Van Buren counties, the appellees, for permission to erect a dam to a height of forty feet above low-water mark in Caney Fork river, the dividing line between the two counties. As the erection and maintenance of the dam would cause the waters in the river and its tributaries to flood certain bridges and fords which the counties maintained, the power company proposed to erect and maintain adequate bridges at such places in accordance with plans filed with its petitions. The proposals were accepted by the two counties, and, acting thereon, the power company constructed its dam. Subsequently the company was succeeded by the appellant Tennessee Electric Power Company. In 1923, the latter company petitioned the county courts of the two counties to be permitted to raise the dam to a height of seventy-five feet above low-water mark. It stated in its petitions that other fords and bridges would be flooded, and, as a condition to the granting of the permission sought, it proposed to raise the bridges and build others where fords were destroyed, without cost to the counties, agreeing to bear the "cost of continued maintenance of said bridges." These proposals were also accepted, and the bridges were raised or erected and maintained until March, 1929, when an unprecedented flood damaged them in varying degrees. Upon appellant's refusal to repair them, appellees filed separate suits in the state court to compel specific performance of the contracts. The causes were removed from the state court to the court below and heard together, where there were decrees for per-

formance in accordance with the prayers of the bills. The power company appeals.

█ It may be stated at the outset that the dam was erected under legal authority, and no contention can be made on the record here presented that its erection or maintenance constituted in itself a nuisance. We may also state that we do not regard the failure of appellant to repair the bridges, however broadly the term "maintenance" in its contracts is to be construed, as constituting such maintenance of a nuisance as would justify a decree of abatement. Moreover, appellees' action, in our opinion, proceeds upon the ground of a contractual obligation. Upon this hypothesis, appellant contends that the agreements to maintain the bridges are unenforceable because, under the law of Tennessee, the county is given control of the roads and bridges within its boundary, that it is its duty to maintain them, and that it was not within the power of appellees to delegate this authority, as they have done in the contracts in question, to some one else. Without considering the response that the contention itself suggests, that is, that appellant, having accepted the benefits of the provision, cannot question its validity, and assuming it to be a settled principle that a county may not irrevocably delegate to others a power or trust confided to it on behalf of the public, we are still unable to see why appellees did not have the power to make such provision a part of their contracts. They had the exclusive control of the fords and bridges, and it was their duty to maintain them. Boshears v. Foster, 154 Tenn. 494, 290 S. W. 387. We find nothing in the contracts which they made with appellant in derogation of those rights and duties. Nor are the contracts invalid for lack of consideration. Appellant had the right, under its charter, to construct the dam, but if, in doing so, it injured or destroyed appellees' fords and bridges, it could be made to respond in damages. Greene County v. Tennessee Eastern Electric Co., 40 F.(2d) 184 (C. C. A. 6). Foreseeing that the construction would result in such damages, it agreed to raise and/or erect the necessary bridges, and also to maintain them. There was ample consideration for this undertaking.

█ A further contention of appellant is that even though the contracts are valid, they have not been breached, because "maintenance" means, at most, maintenance under ordinary conditions, and not a replacing of parts that have been swept away or damaged by an unprecedented flood. The

weight of authority, in our opinion, is to the contrary.[1] The cases in which a narrower construction has been adopted are distinguishable upon circumstances not found in the present cases. Thus in Kadderly v. County Court, 32 Or. 560, 52 P. 515, there was a question of the power of the county court under the statutes; and in Huffman v. State Roads Commission, 152 Md. 566, 137 A. 358, the act creating the commission gave it the power to relocate or close the highway, and, having the power to close the highway, it could not be prevented from abandoning the bridge. In Waite v. O'Neil, 76 F. 408, 413, 34 L. R. A. 550 (C. C. A. 6), the owner of a 150-foot lot leased the river front to be used as a landing place for vessels. The front, which was below a 60-foot bluff, was also used as a roadway along the river, and the lessee covenanted to "keep the roadway thereon in good repair." An unprecedented current washed away the roadway and so much of the lot as to leave a depth of only 15 to 30 feet. Specific performance was denied upon the ground that it was impossible to reconstruct the roadway without going beyond the bounds of the lessor's property. It also appeared in that case that the lessor had made landing impossible by consenting to the sinking of rock-filled cribs in the river. Green River Asphalt Co. v. St. Louis, 188 Mo. 576, 87 S. W. 985, bears a closer analogy, the word "maintain" being there construed as a guaranty that did not require the contractor to replace a portion of a pavement that was torn up by a bursting main. But the weight of authority, as we have said, supports the other view. The question is not controlled by common-law responsibility for negligence, where there is no liability for an act of God, but is a matter that arises from contract. One may contract to maintain property even against abnormal or unprecedented hazards, and a contract imposing such obligation without reservations is binding. Mitchell v. Hancock County, supra; Dermott v. Jones, supra.

It is said that the contracts should be construed in the light of the liability of appellant

[1] Dermott v. Jones, 2 Wall. (69 U. S.) 1, 17 L. Ed. 762; Ferguson v. Omaha & S. W. R. Co. (C. C. A.) 227 F. 513; Louisville & N. Railroad v. Iron Co., 118 Tenn. 194, 101 S. W. 414; Ponsler v. Union Traction Co., 76 Ind. App. 616, 132 N. E. 708; State v. C., M. & St. P. R. Co., 164 Wis. 304, 159 N. W. 919; Chambers v. North River Line, 179 N. C. 199, 102 S. E. 198; Louisville, New Albany & Chicago Railway Co. v. Godman, 104 Ind. 490, 4 N. E. 163; People v. Supervisors, 142 N. Y. 271, 36 N. E. 1062; People v. C. & A. R. R. Co., 67 Ill. 118; Mitchell v. Hancock County, 91 Miss. 414, 45 So. 571, 15 L. R. A. (N. S.) 833, 124 Am. St. Rep. 706; Meriwether v. Lowndes County, 89 Ala. 362, 7 So. 198.

had it built the dams without entering into the contracts, that in that situation the measure of damages would have been the cost of raising the existing bridges and constructing bridges at the points where fords had been destroyed. Whatever would be the measure of damages in that character of case, it is sufficient for present purposes to say that appellant expressly agreed to maintain the bridges and, it not appearing from the proofs that it was the intention of the parties to limit the obligation, there is no reason, so far as we perceive, why the contracts should not be construed as written. If the dam had not been constructed, the counties would have had to maintain the existing bridges, but their height would not have been so great, and perhaps the cost of maintenance would have been much less than the cost of maintaining the present bridges. Similarly, without the dam, it would not have been necessary to build bridges at the fords, and appellees would have incurred no cost in maintaining bridges at those places. It was only reasonable to stipulate that appellant should bear the cost of maintaining those bridges made necessary by the construction of the dam. The contract makes no distinction between that class and the other, but binds the appellant to maintain both.

█ We are unable to concur in the holding of the trial court that the contracts are such as authorized decrees of specific performance. The general rule is that courts will not decree specific performance of contracts for the erection and repair of buildings, the construction of works, and the conduct of operations requiring special knowledge, skill, or foresight. Pomeroy's Specific Performance of Contracts (3d Ed.) § 23; Ward v. Newbold, 115 Md. 689, 81 A. 793, Ann. Cas. 1913A, 919; McCarter v. Armstrong, 32 S. C. 203, 10 S. E. 953, 8 L. R. A. 625; Leonard v. Board of Directors of Plum Bayou Levee Dist., 79 Ark. 42, 94 S. W. 922, 9 Ann. Cas. 159; Bomer Bros. v. Canaday, 79 Miss. 222, 30 So. 638, 55 L. R. A. 328, 89 Am. St. Rep. 593. One reason for this rule is that it is difficult, if not often impossible, for a court to exercise the necessary superintendence of the work. Exceptions to its application may usually be traced to inadequacy of remedy at law, or some unusual situation in which justice to the plaintiff permits of no alternative but performance, as where, in such circumstance, the defendant has possession of the property and it is not feasible for the plaintiff to do the work himself, or where the defendant alone has the material or facilities to

do it in accordance with the agreement. Rector of St. David's v. Wood, 24 Or. 396, 34 P. 18, 14 Am. St. Rep. 860. Contracts involving the occupation and use of railroad tracks are also excepted, upon the ground that the safety of the public requires that the exclusive control of the tracks be in the railroad company. There are many cases, to be sure, in which specific performance has been decreed,[2] but an examination of them will show that in practically every such case there was either an inadequate remedy at law or some circumstances connected with the doing of the work which made its performance peculiarly difficult for any one but the obligor.

█ In the present cases, while the designs and plans of the bridges are set out in the petitions which appellant filed with appellees, the proper performance of the work would involve an extended supervision of a series of acts which a nonexpert could not give. The appellant, it is true, could do it by employing experts, as could also the appellees, but the court would hardly be justified in undertaking supervision of appellant's performance. Furthermore, there is a complete and adequate remedy at law. Appellees can themselves do the work or have it done and recover the costs thereof from appellant by way of damages. Nor, so far as is shown by these records, does it appear that appellees need postpone their action for damages until the work is done, for it is not argued, nor seemingly could be, that the costs of repairs could not be ascertained with sufficient accuracy to permit the action to proceed before the work is begun. While the public is of course interested in the restoration of the bridges, as it is in the repair and maintenance of all highways, its interest is not of the character which justifies a decree of specific performance, such as where a corporation fails or refuses to operate its franchise, there being no one else who can operate it (Stephens v. Ohio State Telephone Co. [D. C.] 240 F. 759), or where one railroad company refuses to carry out its contract by permitting

---

[2] Board of Com'rs, etc., v. A. V. Wills & Sons (D. C.) 236 F. 362; Wheeling Traction Co. v. Board of Com'rs (C. C. A.) 248 F. 205; Gas Securities Co. v. Antero & Lost Park Reservoir Co. (C. C. A.) 259 F. 423; New River Lumber Co. v. Tennessee Ry. Co., 136 Tenn. 661, 191 S. W. 334; Texas Co. v. Central Fuel Oil Co. (C. C. A.) 194 F. 1; Kearns-Gorsuch Bottle Co. v. Hartford-Fairmont Co. (D. C.) 1 F.(2d) 318; Brummel v. Realty Co., 146 Md. 56, 125 A. 905; Chesapeake & O. R. Co. v. Williams Slate Co., 143 Va. 722, 129 S. E. 499; Edison I. Co. v. Eastern Pa. Power Co., 253 Pa. 457, 98 A. 652; Prospect Park & C. I. R. R. Co. v. C. I. & B. R. R. Co., 144 N. Y. 152, 39 N. E. 17, 26 L. R. A. 610.

another to use its tracks, there being no adequate remedy at law (Joy v. St. Louis, 138 U. S. 1, 11 S. Ct. 243, 34 L. Ed. 843; Union Pac. Ry. v. Chicago, etc., Ry. Co., 163 U. S. 564, 16 S. Ct. 1173, 41 L. Ed. 265).

Nor are there economical reasons which make it expedient that appellant do the work. Appellees say that the doing of it at a reasonable expense must depend on the control of the stage of the water behind the dam, and as that control is in appellant, unless appellant itself does the work it is not practicable to do it economically. The record does not show that the stage of the water would affect the work or that, if it did, appellant would not control the water, so far as it could, for the convenience of appellees. If appellant were unwilling to do this, appellees could proceed with the work, and if the expense were made greater by reason of appellant's failure to co-operate, such additional expense would be recoverable in damages.

The decrees are reversed, and the causes remanded to the lower court, with direction to transfer them to the law side of the docket, to permit such amendments to the pleadings to be filed as the parties deem necessary and are proper, and to try the cases as law cases.