The Prospect Park and Coney Island Railroad Company, Appellant, *v.* The Coney Island and Brooklyn Railroad Company, Respondent.

Plaintiff, a corporation operating a steam surface railroad, running from Coney Island to a depot in the city of Brooklyn, and also certain horse-car lines in said city, entered into a contract with defendant, a corporation engaged in operating certain horse-car lines in the city and a line to Coney Island. By the contract, plaintiff granted to defendant the use of certain of its tracks in the city, from a point named to said depot, for twenty-one years from June 1, 1882, free of charge. Defendant covenanted to run cars to plaintiff's depot to connect with the trains of the latter, running to and from the island. The contract contained a provision that in case defendant should use steam as a motive power on its line between the city and the island, either party could terminate the contract on six months' notice. The parties acted under the contract until October, 1889, when defendant adopted the trolley system of running cars by electricity for use upon its road between the city and the island, ceased to run its cars to said depot, and advised plaintiff that it did not intend to do so. In an action to compel specific performance of the contract, *held* (ANDREWS, Ch. J., dissenting), that the electrical system adopted by defendant could not be regarded as the use of steam as a motive power, and did not bring the case within the provision providing for the termination of the contract, and that plaintiff was entitled to the relief sought.

In 1887, plaintiff leased all of its franchises to construct and operate horse-car lines in the city to another company which was also operating horse-car lines in the city. The lease, however, was made subject to the contract and reserved all the defendant's rights under it. Defendant made no objection to this transfer until after its refusal to perform the contract. One of defendant's lines ran to a ferry in said city. At the time of making the contract plaintiff had obtained a charter authorizing it to construct a horse-car line from said ferry to its depot. This was known to defendant when it entered into the contract. Plaintiff's lessee constructed said line and it became a competitor with defendant's line. *Held*, that neither the lease nor the action of the lessee under it justified defendant's breach of the contract.

Where there is such a change of conditions as to unfavorably affect one of the parties to a contract having a long time to run, this does not furnish a reason for refusing to compel specific performance of the contract by the party so affected unless such change has made performance so onerous that the enforcement will impose great hardship upon that party and will be of little or no benefit to the other party.

A contract is to be judged as of the time when it was entered into, and if fair then, the fact that it has become a hard one for one of the parties, by the force of subsequent circumstances or changing events, will not necessarily prevent its specific performance.

*P. P. & C. I. R. R. Co.* v. *C. I. & B. R. R. Co.* (66 Hun, 366), reversed.

(Argued November 28, 1894; decided December 11, 1894.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, entered upon an order made December 12, 1892, which reversed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to compel the specific performance of a contract.

The facts, so far as material, are stated in the opinion.

*George W. Wingate* for appellant. This case being an appeal from a decision of the General Term reversing a judgment rendered upon a trial at Special Term without a jury, and the judgment stating that such reversal was for errors of both law and fact, this court must review such decision upon the questions of fact as well as the questions of law. (Code Civ. Pro. § 1338.) The legality of the contract between the parties was not disputed by the courts below and is unquestioned. (Laws of 1839, chap. 218, § 1; *Jourdan* v. *L. I. R. R. Co.*, 6 N. Y. S. R. 89; 115 N. Y. 380, 384.) Judges CULLEN and BROWN were correct in holding that the substitution of electricity by the overhead system as a motive power is not equivalent to the use of steam as a motive power for propelling cars provided for in the contract. (*H. R. T. Co.* v. *W. T. & R. R. Co.*, 135 N. Y. 393.) Judge BROWN was correct in holding that as the case contained no certificate that it contained all the evidence, and there was evidence in the case to support Judge CULLEN's . findings, they were not subject to review by the General Term. (*Howland* v. *Howland*, 20 Hun, 472; *Spence* v. *Chambers*, 39 id. 193; *Porter* v. *Smith*, 107 N. Y. 531.) The

findings of a trial judge upon conflicting evidence should not be disturbed on appeal unless entirely unsupported by, or very clearly against, the weight of evidence. (*Becker·* v. *M. E. R. Co.*, 131 N. Y. 500; *Barnard* v. *Ganz*, 140 id. 249.) Judges CULLEN and BROWN were correct in holding that this was a contract whose specific performance should be enforced in equity. (*Wilson* v. *F. R. Co.*, L. R. [9 Eq. Cas.] 28; *Green* v. *W. C. R. R. Co.*, 13 id. 44; *W. & W. R. R. Co.* v. *L. & N. W. R. R. Co.*, 16 id. 433; ·*Lawrence* v. *S. L. R. Co.*, 36 Hun, 467; *Murtfeldt* v. *N. Y., W. S. & B. R. Co.*, 102 N. Y. 703; *Joy* v. *St. Louis*, 138 U. S. 1; *Burton* v. *Barbour*, 104 id. 126, 135; *Mulkinburger* v. *R. R. Co.*, 106 N. Y. 286, 311, 312; *U. T. Co.* v. *I. M. Co.*, 117 U. S. 434, 458; *People* v. *O'Brien*, 111 N. Y. 1.) There is no authority for the contention that mere inconvenience or circumstances which affect the interest of one party alone constitute any reason why the performance of a contract should not be decreed by a court of equity. (Fry on Spec. Perf. 116; *Stuart* v. *L. & N. W. R. Co.*, 15 Beav. 513; *Paine* v. *Miller*, 6 Ves. 349; *Paine* v. *Hutchinson*, L. R. [3 Eq.] 257; *F. T. Co.* v. *Harrison*, 145 U. S. 459.) Judge CULLEN was correct in finding that plaintiff sustained a loss in consequence of the breach of this contract. (125 N. Y. 64; *Lahr* v. *M. E. R. Co.*, 104 id. 268, 295; *Drucker* v. *M. E. R. Co.*, 105 id. 158.) Judge CULLEN was correct in providing in the decree that the plaintiff should have leave to bring an action at law to recover the damages caused by defendant's breach of contract. (*Brinkley* v. *Brinkley*, 56 N. Y. 193; *Acker* v. *Leland*, 105 id. 5; *Wakeman* v. *Wheeler*, 101 id. 205; *Drucker* v. *M. E. R. Co.*, 106 id. 157.) The General Term was in error in holding that Judge CULLEN had failed to make proper findings. (*Bohen* v. *M. E. R. Co.*, 129 N. Y. 576; *Becker* v. *M. E. R. Co.*, 131 id. 509; *Kennedy* v. *Porter*, 109 id. 526; *Baird* v. *Mayor, etc.*, 96 id. 567.)

*William A. Dykman* for respondent. The stationary steam plant by which defendant operates its railroad is a use

of steam as a motive power within the contract. (*Stranahan* v. *S. V. R. Co.*, 84 N. Y. 308; *People ex rel.* v. *Newton*, 48 Hun, 477; *H. R. T. Co.* v. *W. T. & R. Co.*, 135 N. Y. 393.) But we are not required in this action to prove that the change of motive power and the notice ended the contract. It suffices to establish that the change makes it inequitable and unjust to enforce a specific performance. (Pom. on Spec. Perf. 403, §§ 327, 330, 333; Laws of 1874, chaps. 307, 448; Laws of 1886, chap. 282.) Equity will not enforce the specific performance of a contract having ten years to run, which requires the exercise of skill and judgment and a continuous series of acts. (*Blackett* v. *Bates*, L. R. [1 Ch. App.] 117; *P., D. & Co.* v. *T. V. R. Co.*, 9 id. 331; *M. Co.* v. *Ripley*, 10 Wall. 339; *Beck* v. *Allison*, 56 N. Y. 366; *Blanchard* v. *D., etc., R. Co.*, 31 Mich. 43; *A., etc., Co.* v. *Speer*, 32 Ga. 550.) The plaintiff has a remedy at law. (Pom. on Spec. Perf. 9.) It is discretionary with the court to refuse specific performance though the legal right be perfect. (Pom. on Spec. Perf. § 35; *Willard* v. *Taylor*, 8 Wall. 557; *Margraf* v. *Muir*, 57 N. Y. 155; *Miles* v. *D. F. I. Co.*, 125 id. 294; *Clarke* v. *R. L. & N. R. Co.*, 18 Barb. 350; *Murtfeldt* v. *N. Y., W. S. & B. R. Co.*, 102 N. Y. 703; *Conger* v. *N. Y., W. S. & B. R. R. Co.*, 120 id. 29.)

BARTLETT, J.   The parties to this action entered into a contract June 1, 1882, and the plaintiff seeks to compel its specific performance.

The Special Term rendered judgment for plaintiff; the General Term reversed the judgment, and the plaintiff comes here under the usual stipulation in case of affirmance.

The reversal was for error, both of law and fact, and the failure to insert a certificate that the case contains all the evidence having been cured by the amendment of the return by the Supreme Court, we are called upon to review the facts as well as the law.

At the time of making the contract the plaintiff owned a steam surface railroad, usually known as " Culver's Coney Island

Railroad," which extended from Coney Island to a depot at the corner of Ninth avenue and Twentieth street in the city of Brooklyn and adjoining Greenwood Cemetery; the plaintiff also owned certain horse-car railroads, which were entirely distinct from the steam railroad, extending from the depot to Fulton Ferry; the plaintiff also owned a charter entitling it to construct a horse-car line from the depot to Hamilton Ferry and other points.

The defendant, at the time of executing the contract, was operating certain horse-car lines which ran from Hamilton, Fulton and other ferries and from the East river bridge to Ninth street and Ninth avenue, and through Ninth avenue to Fifteenth street, on Fifteenth street to Coney Island avenue, and thence to Coney Island; these lines were operated wholly by horses.

By the contract the plaintiff granted the defendant the right to use its tracks on Ninth avenue from Fifteenth street to the depot at Ninth avenue and Twentieth street, free of charge for twenty-one years from June 1st, 1882.

The defendant covenanted to run during the spring, summer and fall months to plaintiff's depot cars to connect with the ferries and all plaintiff's trains to and from Coney Island.

The plaintiff agreed to furnish defendant necessary terminal facilities at the depot.

This contract was obviously advantageous to both parties; the plaintiff secured passengers to Coney Island from defendant's lines, and the defendant greatly increased its travel by having a direct connection with steam transit to Coney Island.

The defendant's horse-car line to Coney Island could not successfully compete with plaintiff's steam route.

The plaintiff provided defendant with the necessary terminal facilities as required, and the contract was acted upon by both parties until the month of October, 1889.

At that time there was a change in defendant's management, and the company contracted for an electrical equipment from the Parade Ground to Coney Island, commonly known as the trolley system.

The plaintiff, in May, 1890, finding that defendant was not running cars to the depot as required by the contract, requested performance, and was advised that the defendant was under no obligations to run the cars and did not intend to do it.

This action was commenced the following October.

It is insisted by the defendant that the adoption of the trolley system is in contemplation of law a use of steam under the clause in the contract which provides that if the defendant shall use steam as a motive power between Ninth avenue and Fifteenth street, in the city of Brooklyn and Coney Island, either party can terminate the contract on six months' notice, and that the correspondence and answer in this case are equivalent to notice, and the contract no longer exists.

We agree with the Special Term that the electrical system adopted by the defendant cannot be regarded as the use of steam as a motive power. (*Hudson River Turnpike Co.* v. *Watervliet T. & R. Co.*, 135 N. Y. 393, 402.) It would be in disregard of the natural and obvious meaning of language to hold otherwise.

We cannot agree with the General Term that the use of the words "steam as a motive power" was only another form of referring to rapid transit by whatever means accomplished. To so hold would be to make a new contract for the parties.

The defendant insists further that by reason of certain acts of plaintiff, and by changes in the surrounding circumstances, it would be inequitable and unjust to enforce a specific performance of the contract.

This leads us to consider some additional facts disclosed by the record.

On the ninth of December, 1885, plaintiff leased to the Atlantic Avenue Railroad Company all its franchises to construct and operate horse-car railroads in the city of Brooklyn, and on May 27th, 1887, in pursuance of chapter 282 of the laws of that year, conveyed said rights and interests abso-. lutely. The lease and conveyance were made expressly subject to the contract in question, and reserved all the defendant's·

rights thereunder; they also required the Atlantic Avenue Railroad Company to operate the Vanderbilt Avenue Railroad Company as had been previously done by the plaintiff.

The defendant made no objection to this transfer until after its refusal to perform the contract.

Defendant urges that it was greatly damaged by the fact that the Atlantic Avenue Railroad Company had completed, under the franchise obtained from plaintiff, a horse-car line to the Hamilton Ferry.

We are unable to perceive how defendant has suffered any damage in view of the fact that it purchased with full knowledge of plaintiff's franchise and its desire to dispose of the same.

It appears by the uncontradicted evidence that defendant sought to purchase of plaintiff this franchise to complete a route to the Hamilton Ferry either just before or about the time the contract was executed.

The defendant further contends that the plaintiff, under a proper construction of the contract, was not at liberty to sell out its street-car interests, although not restrained by any positive provision.

This contention is based mainly on the alleged fact that the Atlantic Avenue Railroad Company is an active rival of defendant and did not have the same motive to deal fairly with defendant that plaintiff had while seeking to build up its Coney Island business.

The principal complaint against the Atlantic Avenue Railroad Company is based upon the manner in which it performed the contract in regard to defendant's terminal facilities at the depot, corner Ninth avenue and Twentieth street.

The evidence does not satisfy us that there was any persistent effort to delay the cars of defendant at that point or to prevent passengers from the steam road selecting from the cars in waiting the one in which to ride without undue interference.

We think the contract was substantially performed by plaintiff and its grantee in regard to terminal facilities of

defendant and even if this were not the case the defendant could have compelled the observance of its contract rights in every particular by resort to the court.

The fact already referred to, that defendant continued to act under the contract for more than four years after this lease to the Atlantic Avenue Railroad Company, without objection, must be taken very strongly against it in a court of equity.

It seems to us very clear that when the management of defendant was changed in October, 1889, and the road from the Parade Ground to Coney Island was operated by electricity, it at once became an active and successful rival of the plaintiff in securing passengers to and from Coney Island, and had every motive to rid itself of the contract if it could be legally done.

We agree with the learned trial judge, that while it is impossible, under the state of the proofs, to determine to what extent plaintiff has been damaged by defendant's adoption of the trolley system, yet it is clear that it has suffered considerable loss.

It is of course entirely legitimate for defendant to secure to itself whatever share of the Coney Island travel it can by the exercise of proper business methods, but we are unable to perceive any reason, under the proofs as presented, why defendant should be released from the obligations of a contract entered into in good faith by both parties, and that has been practically construed by years of performance.

It may very well be that under a contract having twenty-one years to run there may be such a change of conditions as will affect unfavorably the one party or the other, but this offers no reason for refusing specific performance, unless subsequent events have made performance by the defendant so onerous that the enforcement would impose great hardship and cause little or no benefit to the plaintiff. (*Trustees of Columbia College* v. *Thacher*, 87 N. Y. 316, 317; *Murdfeldt* v. *N. Y., W. S. & B. R. Co.*, 102 id. 703.)

In the case at bar the plaintiff, we think, would be benefited

by defendant running the transfer car in Ninth avenue from Fifteenth street to its depot at Twentieth street.

On the other hand, it may be assumed that the defendant, by cheaper fare and its ability to carry passengers to Coney Island without transfer, will be able to secure its full share of the passengers to and from the seashore.

The result of compelling the specific performance of this contract will be to afford the general public an opportunity when traveling over the line of defendant's from the ferries, to make choice of the route they will take to Coney Island when arriving at Ninth avenue and Fifteenth street.

While it may be somewhat to the disadvantage of defendant to perform its contract under the present circumstances, when active competition exists between plaintiff and defendant, yet that fact presents no legal reason for discharging it from the obligations of its contract.

As a final point the learned counsel for the defendant insists that equity will not enforce the specific performance of a contract having some years to run which requires the exercise of skill and judgment and a continuous series of acts.

While there is some conflict in the cases, and all are not to be reconciled, yet the great weight of authority permits specific performance in the case at bar.

The Special Term enjoined the defendant from operating any of its cars unless it performs its contract with the plaintiff.

The provisions of this contract are neither complicated nor difficult and are such as a court of equity can enforce in its discretion.

A few of the cases may be referred to as illustrating the power vested in a court of equity to compel the specific performance of contracts similar to the one at bar.

In *Storer* v. *Great Western Railway Co.* (2 Young & Coll. N. R. 48) the court compelled the defendant to construct and forever maintain an archway and its approaches. The court said there was no difficulty in enforcing such a decree.

In *Wilson* v. *Furness Ry. Co.* (Law Rep., 9 Equity Cases, 28) the defendant was compelled to erect and maintain a

wharf. (See, also, *Green* v. *West Cheshire R. Co.*, Law Rep., 13 Equity Cases, 44.)

In *Wolverhampton & W. R. Co.* v. *London & N. W. R. Co.* (Law Rep. 16 Eq. Cas. 433) the agreement between the two companies was that the defendant should work the plaintiff's line, and during the continuance of the agreement develop and accommodate the local and through trade thereof and carry over it certain specific traffic.

The bill was filed to restrain the defendant from carrying a portion of the traffic which ought to have passed over the plaintiff's line by other lines of the defendant.

The point was made that the court could not undertake to enforce specific performance, because it would require a series of orders and a general superintendence to enforce the performance, which could not conveniently be administered by a court of justice. The injunction issued and Lord SELBORNE said (p. 438): "With regard to the argument that upon the principles applicable to specific performance no relief can be granted, I cannot help observing that there is some fallacy and ambiguity in the way in which in cases of this character those words specific performance are used. * * * The common expression, as applied to suits known by that name, presupposes an executory as distinct from an executed agreement. * * * Confusion has sometimes arisen from transferring considerations applicable to suits for specific performance, properly so called, to questions as to the propriety of the court requiring something or other to be done in specie. * * * Ordinary agreements for work and labor to be performed, hiring and service and things of that sort, out of which most of the cases have arisen, are not, in the proper sense of the word, cases for 'specific performance;' in other words, the nature of the contract is not one which requires the performance of some definite act, such as the court is in the habit of requiring to be performed by way of administering superior justice, rather than to leave the parties to their remedies at law. * * * The question is whether the

defendants, being in possession, they are not at liberty to depart from the terms on which it was stipulated that they should have that possession."

The American cases are equally clear.

In *Lawrence* v. *Saratoga Lake Ry. Co.* (36 Hun, 467) the defendant was, among other things, to erect a depot at which all trains were to stop. Specific performance was decreed, the court holding that, although under the agreement the defendant could not be compelled to run trains upon its road, yet it might properly be enjoined from running any regular trains which did not stop at the station.

The objection that the judgment in this case involves continuous acts and the constant supervision of the court is well met by the reasoning in *Central Trust Co.* v. *Wabash, St. Louis & P.* (29 Fed. Rep. 546), being affirmed as *Joy* v. *St. Louis* (138 U. S. 1; 47, 50), where Judge BLATCHFORD wrote the opinion.

As to inconvenience or circumstances which affect the interest of one party alone constituting a reason why performance should not be decreed, the case of *Marble Co.* v. *Ripley* (10 Wall. 339, 358) furnishes a clear discussion of the general principles involved.

The rule established by the above and kindred cases is that a contract is to be judged as of the time at which it was entered into, and if fair when made the fact that it has become a hard one by the force of subsequent circumstances or changing events will not necessarily prevent its specific performance. (See, also, *Stuart* v. *London & N. W. Ry. Co.*, 15 Beavan, 513; *Mortimer* v. *Capper*, 1 Bro. C. C. 156; *Jackson* v. *Lever*, 3 id. 605; *Paine* v. *Meller*, 6 Ves. 349; *Paine* v. *Hutchinson*, L. R., 3 Eq. Cas. 257; *Franklin Tel. Co.* v. *Harrison*, 145 U. S. 459, 472, 473.)

A large number of other cases might be cited sustaining the power of the court to decree the specific performance of this contract, but we do not deem it necessary.

There can be no well-founded doubt as to the power of the court in the premises, and the important question is whether

in the exercise of a wise discretion and in view of all the circumstances specific performance should be decreed.

After a most careful consideration of this case we have reached the conclusion that the plaintiff is entitled to have the contract specifically performed.

The order of the General Term is reversed and the judgment of the Special Term is affirmed, with costs in all the courts.

All concur, except ANDREWS, Ch. J., who dissents on the ground that plaintiff having established a rapid transit road, although the propulsion is by electricity, has met the condition of the contract which entitled it to terminate such contract, or at least has placed itself in such a position that a court of equity will not enforce specific performance.

Ordered accordingly.