# The Edison Illuminating Company *v.* Eastern Pennsylvania Power Company, Appellant.

*Landlord and tenant—Leases—Covenants—Breach — Remedy — Specific performance—Equity—Equity jurisdiction — Corporations —Public service corporations.*

1. The fact that a lessor has reserved the right to terminate a lease for nonpayment of rent or nonperformance of covenants by the lessee does not compel the lessor to take such course, but it may permit the lease to stand and adopt such other remedy as may be open to it and effective to safeguard its legal right.

2. While as a general rule courts will hesitate to order the specific performance of a contract, where the execution of the decree requires supervision extending over a long period of time, or calls for a knowledge of technical matters incident to its performance, which neither the court nor its officers may be expected to possess, where the contract is one in which public interest and convenience is at stake, specific performance will be decreed even though certain oversight or discretion is required.    The mere fact that a remedy

at law exists is not sufficient to oust equitable jurisdiction if the legal remedy is inadequate or incomplete.

3. The plant of an electric power company was leased for ninety-nine years at a stipulated rental, with covenants on the part of the lessee to maintain and preserve the building and the general efficiency of the plant during the continuance of the lease, making all necessary repairs and renewals of machinery, etc., with a reservation to the lessor of the right to declare the lease ended and resume possession of the premises in the event of default in the payment of rent, or in case of any breach of covenant on the part of the lessee; the assignee of the lessee failed to maintain the general efficiency of the plant, but allowed it to fall into disrepair. In a suit in equity brought by the lessor for specific performance of the covenants to repair the lower court awarded the relief prayed for. *Held,* that it was not material that the lessor might have terminated the lease or have brought an action at law for breach of the covenants, and the decree was affirmed.

4. Where in such case the property was leased in 1900, and violations of the covenants with respect to repairs were made by the lessee shortly thereafter, and it appeared that the assignee of the lessee had agreed to perform those covenants of the lease which it would be bound to perform as occupant of the premises and also those which had not been performed by the lessee, and where the correspondence showed a long dispute between the parties as to the performance of the covenants, the lower court did not err in deciding that a suit brought in 1912 for specific performance was not barred by laches.

Argued March 6, 1916. Appeal, No. 220, Jan. T., 1916, by defendant, from decree of C. P. Northampton Co., Nov. T., 1912, No. 2, for plaintiff on bill for specific performance of the covenants of a lease, in case of The Edison Illuminating Company v. Eastern Pennsylvania Power Company. Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Bill in equity for specific performance. Before STEWART, P. J.

The opinion of the Supreme Court states the facts.

The court awarded the relief prayed for. Defendant appealed.

*Errors assigned* were various findings of fact and conclusions of law, and the decree of the court.

*Edward J. Fox,* with him *John H. Iselin* and *James W. Fox,* for appellant.—The complainant cannot maintain its bill under the circumstances, because there is an adequate remedy at law.

This contract belongs to a class, specific performance of which equity will not decree, because the contract requires continuous acts, involves skilled judgment and technical knowledge: Rutland Marble Company v. Ripley, 77 U. S. 339; Texas & Pacific Ry. Co. v. Marshall, 136 U. S. 393; Stanton v. Singleton, et al., 47 L. R. A. (O. S.) 334; Lone Star Salt Company v. Texas Short Line Ry. Co., 90 S. W. Repr. 863; Pittsburgh v. Pittsburgh Rys. Co., 234 Pa. 193.

The plaintiff was guilty of laches: Good v. Queens Run Fire Brick Co., 224 Pa. 496; Clark v. Edwards, 58 Pa. Superior Ct. 456.

Relief ought not to be granted because the nominal plaintiff is not interested therein.

*Henry C. Boyer* and *H. J. Steele,* for appellee.—Specific performance of the contract in question is not impracticable.

The receipt of rent did not exonerate the defendant from the performance of its covenants: Verdolite Co. v. Richards, 7 Northampton County 113; Springer v. Chicago Real Est. Loan & Trust Co., 102 Ill. App. 294.

The plaintiff's laches, if any, did not bar its title to recovery.

OPINION BY MR. JUSTICE FRAZER, May 1, 1916:

Plaintiff, engaged in the business of furnishing electric light and power to the City of Easton, on February 1, 1900, leased its plant and system, for a period of ninety-nine years, to the Easton Power Company, a competitor, at the annual rental of $30,000. Pursuant to

the terms of the lease, an inventory was made and the property valued at $168,823.33. The lessee operated the plant for ten years, and in 1910 consolidated with certain other lighting companies forming a new corporation, under the name of the Easton Gas & Electric Company, which company, in 1911, conveyed its property to the Eastern Pennsylvania Power Company, the defendant in this case. Since filing this bill defendant was merged into the Pennsylvania Utilities Company, and that corporation was made a party to the record. The lease contained a provision forbidding its assignment, or the selling or subletting of the premises, without consent of the lessor in writing. The Eastern Pennsylvania Power Company, by agreement, also in writing, undertook the performance of all the covenants of the lease "including not only those which it would be bound to perform as assignee of the lease during its occupancy but also those which have not been performed by the prior lessee, The Easton Power Company, or the Easton Gas & Electric Company." It was also provided that the lessor "by the execution and delivery hereof does not waive thereby any rights, preferences, contracts, privileges, powers or causes of action now vested in it in respect to said lease."

At the time of the execution of the lease the capacity of plaintiff's plant, taking the rate of all its generators whether fit for use or not, was 2,000 kilowatts. On March 26, 1900, by agreement, not in writing however, the lessee was permitted to remove a certain machine from the leased property to a plant owned by lessee. Subsequently, consent was asked and granted to remove other machinery and make certain changes in connection with the plant, and, in 1903, the lessee proposed to sell part of the machinery, which the testimony shows was obsolete, and substitute therefor electrical appliances of modern construction. Upon refusal of the lessor to accede to this proposition the plant was abandoned for generating purposes, and used only as a substation to convert the current generated at another plant owned by

lessee.   On April 5, 1909, request was made by the lessee for permission to sell a portion of the old apparatus in the leased plant; this request, however, was also refused, and since that time the plant has not been maintained and preserved in a state of efficiency as provided in the lease; and in 1912, according to an inventory taken at that time, the depreciation in value amounted to $74,-175.62, which amount at the time of the trial had increased to $93,105.16.   The bill sets forth the above facts, and asks an order on defendant directing that it maintain a general efficiency of the plant, and make renewals and repairs to the extent of the depreciation, or pay to plaintiff the amount of the falling off in value, as ascertained by the inventory.   The answer admits the plant has not been operated since 1904, and avers plaintiff had full knowledge of the fact, and, further, that the machinery of the leased plant had to a considerable extent deteriorated at the time the lease was made, and for this reason its operation was found to be inexpedient, although, since the use of the electrical machinery and appliances has been discontinued, the buildings and machinery have been properly cared for and preserved. Defendant also alleges plaintiff has an adequate remedy at law.   Consideration of this question in limine resulted in upholding the court's equitable jurisdiction, and, after a hearing on the merits, a decree was entered ordering defendant to specifically perform the covenants of the lease by putting the plant "in the same condition of general efficiency as it was at the time of the said demise" and to "preserve the buildings and make all necessary repairs and renewals of the machinery, equipment, poles, wires, conduits, appliances and franchises of the value set forth in the inventory and appraisement" made at the time the lease was executed.   From the decree so entered defendant appealed, and the principal questions raised by the numerous assignments of error are—(1) whether the court had jurisdiction to order specific performance and (2) as to the construction of

the lease. So far as the facts are concerned the findings of the trial judge are supported by evidence and will, therefore, not be disturbed: Duffey v. Jennings, 247 Pa. 388; Martin v. First Nat. Bk. of Pittsburgh, 247 Pa. 493; Hathaway v. Newell, 247 Pa. 460.

The rights and liabilities of the parties must necessarily depend upon the construction of the lease. An examination of that instrument shows the lessee was given power, with the written consent of the lessor, to remove machinery or other materials from the plant on condition that they remain the property of the lessor, unless sold with the latter's consent, in which event the proceeds were to be paid to the lessor, and it was also given the right, with the consent of lessor, which was not to be "unreasonably withheld," to make necessary alterations and improvements for the convenient and economical management of the plant "either by the reconstruction of the lines or any such other way as may best effect the result desired." The tenth paragraph reserves to lessor the right to declare the lease ended, and resume possession of the premises on thirty days' notice, in the event of default by the lessee in payment of rent "or in case of any breach of the covenant" on the part of lessee, in which contingency the lessee agrees to deliver the premises to the lessor, except any property that may have been purchased and paid for by the lessee during the term. The eleventh paragraph provides that in case the lessor should resume possession "as hereinbefore provided" the lessee "shall restore all the property herein demised as per schedule hereto annexed......in as good order as taken, reasonable wear and tear excepted." The twelfth paragraph provides for the taking of an inventory and appraisement "and that upon the expiration or sooner determination of the term of this lease, the said party of the first part shall be put in possession of the fixtures or personal property of similar character, and of the value equal to that herein leased......except in so far as the same may have been accounted for by a

sale." In the thirteenth clause the lessee agreed "during the continuance of this lease" to "maintain and preserve the buildings and the general efficiency of the plant hereby demised, making all necessary repairs and renewals of machinery, equipment, poles, wires, conduits, appliances and franchises as may be required, and that it will properly care for and preserve all engines, boilers, machinery and appliances not used, and will replace any or any part thereof broken, injured or worn out after its possession under this lease, subject, however, to the other provisions of this agreement with reference to the sale of machinery or fixtures." In the fourteenth paragraph the lessee also agreed during the continuance of the lease to "keep and maintain the said demised premises in good order and repair."

While the eleventh clause of the lease seems to require a restoration of the property to its original condition only at the end of the term, or unless the lessor should resume possession at an earlier date, the subsequent provisions for maintaining the general efficiency of the plant and making all necessary repairs and renewals of machinery and equipment "during the continuance of this lease" clearly indicate an intention to require the plant to be kept in efficient operating condition at all times. The term of lease was a long one, presumably considerably longer than the life of the machinery, and if a return of the plant in a condition to be operated was contemplated by the parties, necessarily the renewal and replacement of worn out machinery from time to time so as to maintain a plant of the required 2,000 kilowatts capacity was indispensable, and that burden would not be discharged by merely repairing the machinery already installed. The mere fact that the lessor reserved the right to terminate the lease for nonpayment of rent or nonperformance of covenants by the lessee does not compel it to take such course, but it may permit the lease to stand and adopt such other remedy as may be open to it, and effective to safeguard its legal rights. A contrary

rule would confer upon the lessee the power, at any time, to compel a termination of the lease by simply refusing to carry out its terms.

As a general rule courts will hesitate to order specific performance of contracts where the execution of the decree requires supervision extending over a long period of time, or calls for a knowledge of technical matters, incident to its performance, which neither the court nor its officers may be expected to possess: 36 Cyc. 576 C; 36 Cyc. 584, 5; but there are a number of cases holding in effect that where the contract is one in which public interest and convenience are at stake, specific performance will be decreed even though certain oversight or discretion is required. This exception to the rule has been applied frequently in cases of contracts made by railroads and other public service corporations where public interests are involved: Joy v. St. Louis, 138 U. S. 1; Union Pacific Ry. Co., et al., v. Chicago, Rock Island & Pac. Ry. Co., et al., 163 U. S. 564; Prospect Park & Coney Island R. R. Co. v. Coney Island & Brooklyn R. R. Co., 144 N. Y. 152. Plaintiff is a public service corporation, with power of eminent domain, and is bound to carry out the purposes of its incorporation in return for the franchises so conferred. In this case transfer of the franchises by lease was made pursuant to statutory authority, otherwise the agreement could not have been legally executed, and the present defendant in accepting the transfer bound itself to carry out the terms of the lease for the benefit of the public it serves. The parties, therefore, stand in a different position from individuals engaged in a strictly private enterprise. Furthermore, a decree of specific performance here does not involve the supervision of the business of the corporation, but merely requires the replacing of property, and restoring and maintaining the plant in a proper state of repair and efficiency. An action at law for damages clearly would not give adequate relief, for the reason that plaintiff would be obliged continually to institute actions for de-

faults, or await the expiration of the lease at the end of ninety-nine years. The granting of specific performance is a matter largely within the discretion of the court, and must depend upon the varying circumstances of each particular case. No fixed rule can be laid down; the jurisdiction, however, must be regulated so as to meet the requirements of ever-changing business conditions, and new rights and relations which constantly arise: Union Pacific Ry. Co., et al., v. Chicago, Rock Island & Pac. Ry. Co., et al., 163 U. S. 601. The mere fact that a remedy at law exists is not sufficient to oust equitable jurisdiction; the question is whether the remedy is adequate or complete: Bierbower's App., 107 Pa. 14; Penna. R. R. Co. v. Bogert, 209 Pa. 589; and a bill may be sustained solely on the ground that it furnishes the most convenient remedy: Brush Electric Co.'s App., 114 Pa. 574. In Independent Bldg. & Loan Association v. Real Estate Title Co., 156 Pa. 181, it was said (page 194): "Although an action of assumpsit might have been brought......yet relief in a clear subject of equity jurisdiction is not barred by the existence of a remedy at law even if......that remedy could be considered adequate." To the same effect is Gray v. Citizens' Gas Co. of Port Allegany, 206 Pa. 303.

In view of the fact that the correspondence between the parties shows the existence of a long continued dispute concerning the construction of the lease and removal of machinery from the premises, and in view of the provision in the assignment to defendant to the effect that plaintiff waived no rights or causes of action vested in it in respect to the lease, we cannot hold that the rights of plaintiff are barred by laches.

The decree is affirmed.