## Borough of Nesquehoning v. Carbon-Lehigh Intermediate Unit No. 21

*Thomas S. McCready and William Z. Scott Jr.,* for plaintiff.

*Anthony C. Santone,* for defendant.

LAVELLE, *Chancellor,* March 22, 1984—In this unusual case, a municipality-lessor is asking this court to invoke its equity powers to compel another municipality-lessee to make substantial repairs to an unmaintained and deteriorating leased premises. What makes the case so unusual is that neither counsel has presented to the court a single Pennsylvania trial court or appellate court decision where a landlord successfully sought or obtained from the tenant the equitable relief sought in this case. Even more unusual is that plaintiff borough is asking the court to order and supervise specific repairs to an old school building on the basis of a very vague provision in a one-dollar-a-year, 25-year-term lease agreement.

A bench trial was held on August 25, 1983. At the conclusion thereof, the parties were directed to file findings of fact and conclusions of law within 30 days of the lodging of the transcript. The court also strongly urged the parties to negotiate their differences. We later extended the filing period upon being apprised by counsel that serious efforts to settle were being made. These negotiations ultimately failed to resolve the controversy, and argument on the findings of fact and conclusions of law was heard on January 4, 1984.

The facts of the case may be simply stated. On January 11, 1966, the Carbon County School Board entered into a lease agreement with the Nesquehoning School District to use the Nesquehoning High School building on East Catawissa Street in the Borough of Nesquehoning. The Nesquehoning School District had no further

need for this building after the Panther Valley Jointure in 1964. The lease was for one dollar a year and had a 25-year term with no provisions for termination on either side prior to the end of the term.

Paragraph VI provides as follows:

"The lessee shall and will, during the continuance of the said term, pay for all costs of operation and maintenance, including custodial service. Cost of repairs, renovations or improvements made to the building and grounds, if ordered and directed by the lessee, shall be financed and paid for by the lessee. *The lessee shall and will, during the continuance of the said term, keep and at the expiration thereof, peaceably deliver up the said demised premises in the like good order and condition as they now are, ordinary wear and tear and casualties by fire and unavoidable accident only excepted.* Any improvements or renovations made during the term of this lease shall become the property of the lessor." (Emphasis supplied.)

About six months after the lease was executed, the Nesquehoning School District transferred the building to plaintiff Borough of Nesquehoning for one dollar.

In 1971, the Carbon-Lehigh Intermediate Unit No. 21 was formed and succeeded the Carbon County School Board by action of the Pennsylvania legislature. In July of 1980, the Intermediate Unit informed plaintiff borough that effective August 30, 1980, it would be vacating the premises.

It is undisputed that defendant vacated the high school building in August of 1980; that defendant has performed no maintenance on the building since June of 1980; and that the building needs both interior and exterior repairs.

Plaintiff contends that paragraph VI of the lease requires the Intermediate Unit to put the building

back in the same condition it was in 1966 when the lease began and continue to maintain the building until 1991, when the lease ends.

Defendant argues that it agreed to lease the building to teach mentally retarded children and received federal funds to do so; that federal law required the unit to "mainstream" these children or put them in normal schools; that its federal funding for this purpose was cut off and it became impossible for it to stay in the building. It contends that it should be excused from further maintenance of the building or, in the alternative, that plaintiff should seek redress against the unit on the law side of the court.

## DISCUSSION

At the very threshold of this controversy between governmental units, we are confronted by the jurisdictional question: Is this the kind of a case in which an equity court should become involved?

When we scrutinize the pleadings and evidence presented by plaintiff, it has the appearance of an action for breach of contract and, upon proper proof, one which could result in a plaintiff's verdict for money damages. The pleadings and evidence of defendant has the semblance of a legal defense to an action for money damages. On the face of the record, we perceive none of the basic indicia of an equity action. Then on analysis of the record, we see no reason why plaintiff cannot seek a complete and adequate remedy at law in the form of an action in assumpsit for damages for this alleged breach of contract.

The only way in which plaintiff would be injured by such a breach would be a loss of monies in making repairs to the building, which plaintiff claims should have been made by defendant. We do not see

why damages cannot be ascertained here with a reasonable degree of certainty by a jury or by a court without a jury. Plaintiff can make the repairs which plaintiff believes should be made to restore the building and then seek recovery of the monies expended as damages.

We have found only one Pennsylvania appellate court decision where a court of equity intervened and ordered a tenant to restore a leased building to its original condition.

In Edison I. Co. v. Eastern Pa. Power Co., 253 Pa. 457, 98 Atl. 652 (1916), Edison Illuminating Co. leased its plant and franchise to furnish electricity to the City of Easton to Eastern Pa. Power Co. for 99 years at $30,000 a year. The lease provided that Eastern was to maintain the general efficiency of the plant during the term of the lease and at the termination or expiration of the lease return it to Edison in its original condition, reasonable wear and tear excepted. For various reasons, Eastern ceased using the plant to generate electricity, began using it only as a substation to convert electricity, and did not maintain the building. Edison filed a suit in equity to compel Eastern to maintain the general efficiency of the plant. Eastern preliminarily objected to the court's equitable jurisdiction but the trial court overruled the objection and entered a decree ordering Eastern to restore the efficiency of the plant. On appeal, the Supreme Court of Pennsylvania affirmed, holding that when the contract or lease is one in which the public interest or convenience is at stake, equity has the power to intervene or order specific performance even though certain oversight and discretion is required.

Although Edison, supra, appears to support equity jurisdiction in the instant case, a careful analysis

of the facts reveals such support is superficial. Edison involved the lease of a power plant and franchise to supply electric power to thousands of citizens in the City of Easton and the failure of the tenant to maintain the efficiency of the plant constituted a threat to the health and safety of their citizens. The old school building which serves as the centerpiece of this lawsuit is empty and serves no public purpose whatsoever. The building is providing no essential public service. There is no compelling public need to restore this school building to its original condition as there was in the Edison case. Moreover, the lease agreement in Edison also included the right and duty to supply electrical power to the City of Easton and there is no doubt that the Supreme Court approved equity jurisdiction in order to preserve the plant and the franchise for the City of Easton. In doing so, the Supreme Court noted that it was carving out a special exception to the general rule:

"As a general rule courts will hesitate to order specific performance of contracts where the execution of the decree requires supervision extending over a long period of time, or calls for a knowledge of technical matters, incident to its performance, which neither the court nor its officers may be expected to possess: 36 Cyc. 576 C; 36 Cyc. 584,5; but there are a number of cases holding in effect that where the contract is one in which public interest and convenience are at stake, specific performance will be decreed even though certain oversight or discretion is required. This exception to the rule has been applied frequently in cases of contracts made by railroads and other public service corporations where public interests are involved: Joy v. St. Louis, 138 U.S. 1; Union Pacific Ry. Co. et al., Chicago, Rock Island & Pac. Ry. Co. et al., 163 U.S. 564;

Prospect Park & Coney Island R.R. Co., 144 N.Y. 152." Edison, at 464, 98 Atl. at 654.

Furthermore, "It requires a much stronger case to move a chancellor to put forth his strong arm to compel a positive act on the part of defendant, than to restrain him from committing a wrongful one . . . . " See Wakeling v. Cocker, 208 Pa. 651, 57 Atl. 1104 (1904), where the Supreme Court upheld the lower court in declining a decree requiring restoration of a wall.

Plaintiff argues that even though a suit for money damages might make it whole for the alleged past breach of contract by defendant, such a legal remedy would have to be sought for future breaches of the lease by defendant over the remaining 15 years of the lease. This could cause a multiplicity of suits and, therefore, plaintiff argues, equity is the most appropriate form for relief. This argument fails to persuade us.

We do not believe that an injunctive order is necessary to prevent further anticipated breaches of this lease agreement. If it is determined in an action at law that defendant's past conduct constituted a breach, defendant, as a responsible and accountable Intermediate Unit, is hardly going to continue in this conduct and render itself liable for additional damages. Even if there is a possibility that defendant may again breach the contract, this is not sufficient to invoke the jurisdiction of a court of equity. Barco Inc. v. Steel Crest Homes Inc. 420 Pa. 553, 218 A.2d 221 (1966).

But there is a further and equally compelling reason for this court to refrain from exercising equity jurisdiction. Courts of equity cannot monitor and supervise repair work to a building where the building is in a state of disrepair and the parties cannot agree on what is to be repaired and the extent to

which something is to be repaired. In Goldenberg v. Press, 5 D.&C.3d 402 (1977), a tenant sought equitable relief to compel specific performance of lease covenants by the landlord to construct and maintain parking spaces in good repair and made repairs to the exterior of the building. The court transferred the case to the law side of the court, noting that equity will not compel specific performance of lease covenants that would require the court to determine what repairs are reasonable and good and would require continuing supervision by the court. Simply stated, courts of equity cannot become architects or building contractors and are not equipped to supervise the work to see that it is being done properly, to decide what needs to be repaired or refurbished and the nature of the repair work.

Where an adequate remedy at law exists in the form of an action of assumpsit, equity had no jurisdiction. Meehan v. Cheltenham Township, 410 Pa. 446, 189 A.2d 593 (1963). There is an adequate remedy at law on the facts in this case. We are convinced that the measure of damages in an assumpsit action is flexible enough to properly recompense plaintiff for its loss upon appropriate proof of breach by defendant and damages.

We therefore enter the following

ORDER

And now, this March 22, 1984, it is hereby ordered and decreed that the above-captioned case be and is hereby certified to the law side of the court.